UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES | ) |
| | ) M.J. No. 22-4236-DHH |
| v. | ) |
| | ) |
| SANTIAGO GOMEZ PORTORREAL, | ) |
| | ) |
| Defendant | ) |
| | ) |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Michael T. Higgins, being duly sworn, depose and state as follows:

1. I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since January 2013. I currently am assigned to the Financial Investigations Team of the New England Field Division in Boston, Massachusetts, where I have been assigned since 2018.

2. I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code. I have received training regarding narcotics investigations while attending the Basic Agent Academy and have attended additional specialized training courses in furtherance of my past and current assignments.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations, and the court-authorized interception of communications. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I

have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs.

4. I submit this affidavit in support of a Criminal Complaint charging Santiago GOMEZ PORTORREAL ("GOMEZ") with violating Title 21, United States Code, Section 846 (attempt to possess with intent to distribute five kilograms or more of cocaine).

5. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by DEA agents and other federal, state, and local law enforcement agents.

6. This affidavit is submitted for the limited purpose of establishing probable cause to believe that GOMEZ has committed the above offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

7. In May 2022, an undercover law enforcement officer (the "UC") posing as a drug distributor began communicating by telephone with a male who self-identified as "Franklin." Franklin was subsequently identified as GOMEZ, as set forth herein, and will hereinafter be referred to as GOMEZ.

8. On May 4, 2022, the UC talked to GOMEZ by telephone.[1] During their conversation, the UC confirmed he could supply GOMEZ with kilograms of drugs.[2] GOMEZ stated that he had already set up a deal with Mexican suppliers, but that he would contact the UC once he was again in need of drugs.

---

[1] The conversations between the UC and GOMEZ described herein were recorded and/or preserved.
[2] During all of the conversations described herein, the UC and GOMEZ spoke in coded language. They discussed "plates of food," "girls," and "guests." Based on my training and experience, I understand the conversations to have pertained to kilograms of cocaine. The UC's understanding of the conversations is consistent with my understanding of them.

9. On May 17, 2022, GOMEZ contacted the UC and requested to purchase ten kilograms of cocaine. The UC and GOMEZ negotiated where the transaction would occur; the UC preferred to meet in New York, but GOMEZ wanted the cocaine delivered to Boston. GOMEZ and the UC also negotiated the price of the drugs. The UC initially quote GOMEZ a price of "2-3," or $23,000 per kilogram. GOMEZ stated that he wanted to pay "with the zero," or $20,000 per kilogram. GOMEZ and the UC ultimately agreed that GOMEZ would pay $200,000 for the drugs. The UC stated that he would contact GOMEZ once he had determined whether he could transport the drugs to Boston.

10. Over the past several days, GOMEZ and the UC communicated via WhatsApp text messages. The UC told GOMEZ that he would have the drugs transported to Massachusetts. They then texted about the whereabouts of the drugs and the general location where the transaction would take place. On May 29, 2022, the UC and GOMEZ spoke and confirmed the details of the anticipated transaction. On June 2, 2022, the UC sent GOMEZ a message instructing him to meet at an IHOP restaurant in Tewksbury, Massachusetts.

11. On June 2, 2022, at approximately 1:23 p.m., GOMEZ arrived at the IHOP. The UC was already at the location. After conducting what appeared to be counter-surveillance for a period of time, GOMEZ joined the UC and a second undercover law enforcement officer at a table. The UC and GOMEZ proceeded to have a recorded conversation. During the conversation, GOMEZ inquired about the quality of the drugs and stated that the quality was the most important factor for him. The UC told GOMEZ that the drugs he had were "escamosa," which the UC knows to be a reference to a particular type of high-quality compressed powder cocaine that is sold to users who snort the cocaine.[3] The UC further stated that the drugs were

---

[3] GOMEZ previously had told the UC that he wanted to obtain "escamosa."

93-97% pure. GOMEZ suggested that they would move to a nearby Home Depot parking lot to conduct the exchange of the ten kilograms of drugs for $200,000.

12. GOMEZ and the UC then moved their cars to the Home Depot parking lot, where they parked together. GOMEZ showed the UC the payment for the drugs, which was in a box in his car. The UC then showed GOMEZ the "drugs," which were rectangular packages (that did not in fact contain drugs) wrapped in black tape and vacuum sealed in plastic, contained in a duffel bag. Based on my training and experience, the rectangle packages were consistent with the appearance of kilograms of drugs packaged for distribution. GOMEZ asked if the UC had a knife that that GOMEZ could cut into one of the packages and see the drugs himself. The UC offered to get a knife from the trunk of his car.

13. At that time, law enforcement officers moved in to arrest GOMEZ. GOMEZ fled, and after a brief foot chase, he was apprehended. Agents seized the box of currency from GOMEZ's car. The money was bundled and secured with elastic bands. Based on my training and experience, such bundling is common among drug traffickers to facilitate the counting of large quantities of money.

14. Based on my training and experience, possession of ten kilograms of cocaine is consistent with possession with intent to distribute cocaine rather than with possession for personal use.

15. At the time of his arrest, GOMEZ stated that his name was Norberto Vega Hernandez. GOMEZ's fingerprints, however, indicate that he is Santiago GOMEZ PORTORREAL. When asked where he resides, GOMEZ stated that he could not remember.

## Conclusion

16.     Based upon the foregoing, there is probable cause to believe that on June 2, 2022, Santiago GOMEZ PORTORREAL did attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Section 846.

_____
Michael T. Higgins
Special Agent
Drug Enforcement Administration

Sworn to by telephone in accordance with Fed. R. Crim. Pr. 4.1 on June 3, 2022,

9:18 a.m.

_____
HON. DAVID H. HENNESSY
United States Magistrate Judge
District of Massachusetts